An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1064

Filed 2 July 2025

Gates County, No. 22JT000003-360

IN THE MATTER OF: I.M.W.

Appeal by Respondent-Father from an order entered 1 August 2024 by Judge Meader W. Harriss III in Gates County District Court. Heard in the Court of Appeals on 12 June 2025.

> *Pritchett & Burch, PLLC, by L. Clifton Smith, III, for the Petitioner-Appellees.*
>
> *Melissa L. Skinner, for the Guardian ad Litem.*
>
> *Office of the Parent Defender Wendy C. Sotolongo, Esq., by Assistant Parent Defender J. Lee Gilliam, for the Respondent-Appellant Father.*

WOOD, Judge.

Respondent-Father ("Father") appeals from the trial court's order entered 1 August 2024 terminating his parental rights to I.M.W. ("Issac")[1] on the grounds Father willfully neglected the juvenile and willfully abandoned the juvenile.[2] Father argues the trial court's order terminating his parental rights must be reversed because the trial court's findings of fact do not support the conclusions of law that he

---

[1] Pseudonyms are used to protect the identity of the minor children. *See* N.C. R. App. P. 42(b)(1).

[2] Respondent-mother is not a party to the appeal.

willfully abandoned or willfully neglected his son. Father additionally argues the trial court erred in not addressing an alleged conflict with the Guardian ad Litem. After careful review of the record and applicable law, we affirm the trial court's termination of parental rights order.

## I. Factual and Procedural Background

Issac was born on 27 May 2011. Petitioners, Susan and Frank Day[3] ("Susan," "Frank," or collectively "the Days") acted as Mother's de facto parents from the age of fifteen to when she was nineteen years old. Issac is the second of Mother's four children however, Issac is the only child Mother and Father share.

Mother and Father were never married, but were housemates for a short time, occasionally having sex, which led to Mother becoming pregnant with Issac. During pregnancy, Mother and Father visited the Days' home twice to drop off Mother's oldest child for the weekend and another time to celebrate a child's birthday. Mother and Father no longer lived together at the time of Issac's birth.

Three days after his birth, Mother left Issac with the Days and he has been continuously in their care since. In 2012, the Days also assumed care of Mother's third child, Elizabeth,[4] whom they formally adopted in 2018.

In 2011 and 2012, when Issac was still an infant, Father visited Mother at her apartment in Chesapeake, Virginia "from time to time," but never made inquiries

---

[3] Pseudonyms are used to protect the identity of the petitioning parties in order to protect the identity of the juvenile.
[4] Pseudonyms are used to protect the identity of the minor children. *See* N.C. R. App. P. 42(b)(1).

about Issac's location or wellbeing. When Issac was around two years old, Father asked Mother to see Issac. Since Issac was not living with Mother, Susan brought Issac to Mother's apartment as requested, but with the exception of Father bringing a few small gifts, neither Mother nor he interacted much with Issac during this visit.

On 16 August 2013, the Days entered into an agreement with Mother for the Days to assume all responsibility for Issac and Elizabeth until they could formally adopt both children. Father was not a party to this agreement. Father has never provided financial support directly to Mother or to the Days, but testified to paying child support for Issac directly to the City of Portsmouth until sometime in 2014. No further evidence regarding Father's assertion was presented.

In 2015, Father lost his phone and his contacts including contact information for Mother and Susan. On 17 February 2016, Susan sent Father a message on Facebook asking to talk to him, leading to approximately twenty messages exchanged between them throughout 2016. On 17 June 2016, Father ran into Frank and Issac in the bathroom of a movie theater. Father approached them in the bathroom and attempted to introduce himself to Issac. Frank, unaware of who Father was, grabbed Issac and left the bathroom quickly. Father messaged Susan on Facebook while still in the theater to say hello and ask if they could meet at the end of the movie, but Susan did not respond.

Between 10 March 2017 and 5 July 2017, Father and Susan exchanged approximately eighty Facebook messages and a few pictures, however many of the messages contain just one or a few words. Father often expressed a desire to see Issac

or to be a part of his life, but never took further action past these messages. For the next five years, there was no communication between Father and the Days.

On 8 August 2022, the Days filed a petition to terminate Mother and Father's parental rights to Issac. The petition asserts the Days have standing to bring this petition because "the juvenile has resided with them for a continuous period of the requisite 18 months or more immediately preceding the filing of this Petition, and in fact since the juvenile's infancy; and therefore, have standing to file this Petition pursuant to [N.C. Gen. Stat.] § 7B-1103 (5)." The Days alleged Mother and Father's "lack of involvement with or regard for [Issac] constitutes abandonment" and that they have "foregone their parental responsibilities and withheld their presence, care, and parental affection from [Issac]." The requisite six-month period preceding the filing of the petition to terminate parental rights ran from 8 February 2022 to 8 August 2022. During this time Father made one attempt to communicate with Susan on 2 August 2022, his first attempt in five years, by sending "Hello" via Facebook Messenger and "Idk if you know who I am but from my [] understanding you have my son. I hope we can get in contact with one another. Soon."

Also on 8 August 2022, the Days filed a motion to appoint Melissa L. Skinner, a licensed attorney, as Guardian ad Litem ("GAL") for Issac pursuant to N.C. Gen. Stat. § 7B-1108(c) to "assist the Court in determining the best interests of the juvenile."

On 22 August 2022, Father was served by a deputy sheriff for the city of Chesapeake, Virginia. On 25 August 2022, Father used Facebook Messenger to call

Susan twice but she did not answer, and he sent a message to her asking, "[c]an we talk please?" Father did not send Susan another message until 24 October 2023.

On 18 January 2024, a pretrial hearing was held. On 23 April 2024, Father filed a custody action against the Days requesting visitation of Issac, indicating Issac had lived with Susan for the past five years.

The adjudication and disposition proceedings on the termination of parental rights petition took place over the course of 16 May 2024, 6 June 2024, and 13 June 2024. Father testified during adjudication that he filed for visitation rather than full custody because he did not want to create an adversarial relationship between himself and the Days as they are who had raised his son.

At the end of adjudication proceedings, the trial court found that Father's 2 August 2022 Facebook message to Susan, was "not even [] an inquiry as to the welfare of the child." The trial court also noted Father's filing for visitation was interesting because "for dad to get visitation . . . his constitutional rights . . . would have to be deemed waived in order for the [Days] to have custody and for him to have visitation . . . he's not even making a claim as to his constitutional status as a parent." The trial court ultimately found Father willfully abandoned and neglected Issac.

The trial court then proceeded to disposition. At disposition, the GAL testified about her interactions with the Days and Issac and to a phone call with Father. The GAL testified Issac seemed to be happy and well adjusted and that "he didn't indicate that he knew anything about somebody else [other than Frank] being his dad." At the close of disposition, the trial court found there to be no bond between Issac and

*Opinion of the Court*

Father and for it to be in Issac's best interest for Father's parental rights to be terminated.

On 1 August 2024, the trial court entered its written adjudication and disposition order terminating the parental rights of Mother[5] and Father. The trial court found grounds existed to terminate Father's rights in that Father willfully neglected Issac pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and willfully abandoned Issac, pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). The trial court concluded that termination of Father's parental rights was in Issac's best interest as it would remove all barriers to his adoption by the Days. On 30 August 2024, Father filed a timely notice of appeal.

## II.    Analysis

On appeal, Father first argues the trial court's order terminating his parental rights must be reversed because the trial court's findings of fact do not support the conclusions of law that he willfully abandoned or willfully neglected his son. Second, Father argues that even if this Court finds the conclusions of law to be supported, this case must be remanded for a new best interest hearing because of an unaddressed conflict of interest by the GAL.

"[T]he issue of whether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights pursuant to [N.C. Gen. Stat.] § 7B-1111(a) is reviewed de novo." *In re D.R.J.*, 381 N.C. 381, 391-92, 873

---

[5] Respondent-mother is not a party to the appeal.

S.E.2d 281, 289 (2022) (quotations omitted). To terminate parental rights there is a two-step process: adjudication and disposition. *In re A.U.D.*, 373 N.C. 3, 5, 832 S.E.2d 698, 700 (2019); N.C. Gen. Stat. §§ 7B-1109, 1110.

## A. Adjudication.

During the adjudicatory stage, the petitioner must prove that one or more grounds for parental termination exist. *In re J.M.J.-J.*, 374 N.C. 553, 555, 843 S.E.2d 94, 98 (2020); N.C. Gen. Stat. § 7B-1111(a). This Court reviews a trial court's adjudication "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re D.R.J.*, 381 N.C. at 391, 873 S.E.2d at 289. Findings of fact "are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." *In re C.M.*, 273 N.C. App. 427, 430, 848 S.E.2d 749, 752 (2020). "Any unchallenged findings of fact are deemed supported by competent evidence and are [therefore] binding on appeal." *In re A.N.R.*, 291 N.C. App. 333, 337, 896 S.E.2d 36, 40 (2023). Once one ground for termination is found there is no need to address the other grounds. *In re N.N.B.*, 271 N.C. App. 199, 203, 843 S.E.2d 474, 477 (2020). After the adjudication stage, where one or more grounds for terminating a parent's rights exist, the court must then determine whether terminating the parental rights is in the juvenile's best interest. *In re A.A.*, 381 N.C. 325, 337-38, 873 S.E.2d 496, 507 (2022).

### 1. Willful Abandonment under N.C. Gen. Stat. § 7B-1111(a)(7).

A trial court may terminate parental rights upon a finding that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C. Gen. Stat. § 7B-1111(a)(7). For abandonment to be the grounds for parental termination it implies conduct by the parent that manifests a "willful determination to forego all parental duties and relinquish all parental claims to the child." *In re A.A.*, 381 N.C. at 335, 873 S.E.2d at 505. "If a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re J.D.C.H.*, 375 N.C. 335, 345, 847 S.E.2d 868, 876 (2020) (cleaned up).

Father contends several of the trial court's findings of fact are unsupported and should be disregarded because ultimately the trial court's findings cannot support willful abandonment. Specifically, Father challenges the trial court's findings of fact 25, 30, 35, 36, 44, 46, 47, 48, 49 and 53. Notwithstanding Father's challenged findings of fact, we find that there are sufficient unchallenged findings to support the trial court's conclusions of law for willful abandonment and thus forgo review of the challenged findings. *In re A.N.R.*, 291 N.C. App. at 337, 896 S.E.2d at 40 ("Any unchallenged findings are 'deemed supported by competent evidence and are binding on appeal.'").

We find the following unchallenged findings support willful abandonment.

> 23. Apart from visiting the juvenile at the hospital following his birth and the occasion in late 2014 when

- 8 -

Petitioner [Susan] brought the juvenile to the home of Respondent [Mother], Respondent [Father] had no other interaction or contact with the juvenile.

26. Respondent [Father] was not actively involved in [Issac's] life and remained outside of his life such that he was unaware of the juvenile's whereabouts or living arrangements until it was clarified by Petitioner [Susan] in March 2016. He was unfamiliar with [Issac's] status because of his inaction in pursing his parental rights and status.

37. The communication between Respondent [Father] and the Petitioners ended on July 5, 2017. There was no communication from Respondent [Father] to the Petitioners until five years later on August 2, 2022, when Respondent [Father] sent [] a message via Facebook Messenger to Petitioner [Susan] stating his understanding that they had "his son" and hoped to be in contact with one another soon.

39. Respondent [Father] made only one attempt, on August 2, 2022, during the requisite period prior to filing of the Petition to inquire about the juvenile. This one attempt was made through Facebook Messenger wherein Respondent [Father] messaged Petitioner [Susan] "Idk if you know who I am but from my [] understanding you have my son. I hope that we can get in contact with one another. Soon."

40. Prior to Respondent [Father's] Facebook message to Petitioner [Susan] on August 2, 2022, Respondent [Father] made no contact with Petitioners or effort to check on the juvenile for the prior five years.

45. Except [f]or one communication on August 2, 2022, six days prior to the filing of the Petition, Respondent [Father] made no attempt to establish a relationship with the juvenile or to exercise his parental rights. In this message on August 2, 2022, stating "Idk if you know who I am but from my understanding you have my son. I hope that we can get in contact with one another. Soon", he failed to inquire as to the welfare of the juvenile.

> 52. The Respondents in all aspects relegated and conferred upon the Petitioners' their parental responsibilities and rights.

These unchallenged findings establish Father "made no attempt to establish a relationship . . . or exercise his parental rights," conferred all "parental responsibilities and rights" to the Days, and since 2014, Father has had no "interaction or contact" with Issac. *In re D.R.W.*, __ N.C. App. __, __, 913 S.E.2d 259, 264 (2025) ("To find that a parent has willfully abandoned his or her child, the trial court must find evidence that the parent deliberately eschewed his or her parental responsibilities in their entirety."). Father's absence and lack of participation in the care of Issac during the determinative six-month period and throughout Issac's entire life support a "willful determination to forego all parental duties" because he has never acted as a parent or provided care. *In re A.A.*, 381 N.C. at 335, 873 S.E.2d at 505.

### 2. Willful Neglect under N.C. Gen. Stat. § 7B-1111(a)(1).

The trial court found grounds for termination of Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), finding Issac to be neglected within the meaning of N.C. Gen. Stat. § 7B-101. "'Because a finding of only one ground is necessary to support a termination of parental rights,' we need not address [Father's] remaining argument regarding the remaining ground of neglect." *In re A.N.R.*, 291 N.C. at 342, 896 S.E.2d at 43 (quoting *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019)).

### B. Disposition.

- 10 -

Father next contends the trial court erred by not addressing the GAL's "inherent conflict" from her dual role as Issac's attorney advocate and as his GAL. The Days originally filed a motion on 8 August 2022 for the appointment of Melissa L. Skinner ("GAL Skinner") as Issac's GAL. On 26 August 2022, the trial court entered an order determining GAL Skinner "is a suitable and proper person to act and serve as the Guardian Ad Litem" for Issac and appointed her as his GAL. During disposition proceedings, GAL Skinner testified as a witness for the Days, discussing her report that was admitted into evidence. GAL Skinner acted dually as GAL and attorney advocate for Issac.

Father has waived this argument on appeal because he "failed to properly preserve this issue by raising the issue or objecting at trial. *In re K.M.C.*, 288 N.C. App. 143, 153, 884 S.E.2d 775, 781 (2023); N.C. R. App. P. 10(a)(1). "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion. . . ." N.C. R. App. P. 10(a)(1). Father made no objection to the appointment of the GAL or to her testimony during the termination proceedings. Because Father failed to raise or object to this issue during the termination proceedings, it has not been preserved for appeal, thus the argument is dismissed.

## III.   Conclusion

Based on the reasoning above, we hold that the uncontested findings of fact support the trial court's conclusion that Father willfully abandoned Issac. Therefore, we affirm the trial court's order terminating Father's parental rights.

AFFIRMED

Judges ARROWOOD and FLOOD concur.

Report per Rule 30(e).